## CITY OF TULSA et al. v. BELL.

No. 18525. Opinion Filed June 18, 1929.

H. O. Bland, Harry L. S. Halley, H. M. Gray, and C. W. Harwood, for plaintiffs in error.

Bell & Hughes and Jack Hayes, for defendant in error.

JEFFREY, C. Eva H. Bell prayed for a

writ of mandamus to compel the, city of Tulsa, its proper officers and agents, to issue her a permit to connect, certain residence properties with a district· sanitary sewer in said city. The trial court issued the writ, and the defendants have appealed. Plaintiff owned the west 160 feet of lots 4 and 5, Clarence Lloyd subdivision in the city of Tulsa. These two lots lie together, and are 160 feet east and west and about 234 feet north and south. All property for a considerable distance in every direction from plaintiff's property was within the corporate limits of the city, but plaintiff's property had never been brought within the corporate limits. In April, 1922, the city constructed a district sanitary sewer embraced in what was designated as district No. 182, surrounding plaintiff's property. A sewer line was constructed along the east side of plaintiff's property and about one foot from her east line. An assessment was made against all property in the district, including plaintiff's property. After the assessment was made it was discovered that plaintiff's property had never been brought within the corporate limits of the city, and the city paid to the contractor who constructed the sewer system the amount of the assessment which was originally entered against plaintiff's property. About the time of the construction· of the district sewer, or shortly thereafter, plaintiff constructed three residence buildings on her property, and built thereon an army regulation cesspool to take care of the sewage. In December, 1923, plaintiff's property was by ordinance included within the corporate limits of the city. In April, 1925, the city superintendent of public health served a written notice upon defendant to the effect that the cesspool located upon her property had been declared a public nuisance, and that the same should be abated and proper connection made with the sanitary sewer, and that in case she failed to do so within ten days, proper action would be instituted against her. Plaintiff then employed a regular licensed plumber to make the connection. Application was made to the office of the city engineer for a permit to tap the sewer, but the permit was refused unless plaintiff would pay the amount originally assessed against her property, which had been paid by the city. A second notice was served by the city superintendent of public health, and plaintiff again applied for a permit, offered to pay the permit fee of $2, but refused to pay the proportionate charge for construction of the sewer demanded by the city, and the city refused to issue the permit. This action was then begun for the purpose of compelling the city to issue the permit upon plaintiff's paying the $2 permit fee.

It appears that from the time plaintiff first requested a permit to the time of trial the city had required that the amount originally assessed against plaintiff's property should be paid by her before she should use the sewer, but no formal ordinance, covering such cases, was enacted until almost a year after the suit was filed. However, plaintiff knew what the pro rata part of the cost which had been figured on her property was; that the city had paid it, and was demanding that plaintiff repay the amount before she could use the sanitary sewer. If the city had the power and authority to enact an ordinance fixing a charge of this kind as a condition precedent to the use of the sewer, it had the right to make the payment of the charge a condition to the issuance of the permit without an ordinance as against plaintiff's right to a writ of mandamus.

It is contended on behalf of the city that the trial court erred in issuing the writ in that the city had a right to make a reasonable charge for the use of the sewer for the purpose of paying for the construction thereof, and that the charge exacted was a reasonable one. On the other hand, it is contended on behalf of plaintiff that the charge exacted of her is in the nature of an assessment, which cannot be imposed upon her property without a compliance with the provisions of the statute governing such cases. The original assessing ordinance for the purpose of paying for the construction of the district sewer was invalid as to plaintiff's property, since the property, at that time, was without the corporate limits of the city. Had the property been within the city limits and within the sewer district, a proper proportion of the cost of construction of the sewer system could have been made a valid lien against the property, whether the property had been vacant or improved, and whether plaintiff desired the use of the sewer or not. This would have been a special assessment as provided by law, and in the nature of a tax upon the property. However, as we view the record, no assessment for the cost · of construction of the sewer is attempted to be enforced against the property, but the city is merely demanding that plaintiff pay that part of the expense of construction, which was originally determined to be a reasonable charge, if she uses the sewer. Plaintiff could not be compelled to connect with the sewer under these conditions. She

could adopt any other adequate means to keep her property in a sanitary condition which would not interfere with the rights of others. The city was not under obligation to provide a sewer for plaintiff at the time the sewer was constructed. Kilcullen v. Webster (Pa.) 103 Atl. 592. No valid assessment having ever been made against plaintiff's property, she was not legally bound to pay any part of the cost of construction of the sewer. But certainly, on general principles, one who is not legally bound to contribute to the construction of the sewer should have no legitimate complaint against a condition that he pay a reasonable charge to help defray the expense of construction, before he can enjoy the use of the sewer. This condition, we think, the city had a right to make under the circumstances.

Under sections 4401 and 4406, C. O. S. 1921, the character of sewer in question must be paid for by the owners of abutting property. Under the assessment plan as provided by section 4406, the whole cost of the sewer must be apportioned against all of the lots or pieces of ground, exclusive of improvements, in proportion to the area of the whole district, exclusive of the public highways. This the city authorities did, and assessed against plaintiff's property the sum of $512.91, which was later found to be unenforceable because her property was outside the city limits, and the amount was paid by the city.

The determining question therefore is, Is the charge demanded by the city a reasonable one? This was regarded as the test in the following cases, which are at least analogous in principle: Herrmann et al. v. State of Ohio, 54 Ohio St. 506, 43 N. E. 990; City of Fergus Falls v. Boen, 78 Minn. 186, 80 N. W. 961; and City of Fergus Falls v. Edison (Minn.) 102 N. W. 218. The syllabus of the first cited case is as follows:

"Where, by municipal authority, a system of sewers is constructed with a view to assessing a portion of the costs thereof equally upon the abutting property, and a portion of the assessments are paid, and a portion successfully resisted, a rule requiring as a condition to the use of the sewer that those who so resisted shall pay a sum equal to that paid by others towards its construction is not unreasonable."

It is not contended that the amount sought to be collected is unreasonable, except that plaintiff not being permitted to connect with the sewer in the first instance, she incurred other expense in providing a means for handling the sewage. It appears that the amount demanded by the city is equal in proportion to the footage to the amounts paid by other persons in the district and was arrived at as required by law for assessing the cost of district sewers. In the Herrmann Case it was said:

"The rule in question was adopted and properly conditioned to require that those who had not paid assessments should, when desiring to use the sewer, accept an equal burden with those who had. We cannot say that the rule is unreasonable."

Under these circumstances, we cannot say that the charge as a condition for the use of the sewer is unreasonable. But plaintiff says that at the time the sewer was constructed she offered to pay for one-half of the cost of that portion which extended along her property for the privilege of using it; that she was denied that privilege and was compelled to construct a cesspool and septic tank on her property at a great expense; and that it will now work an injustice on her if she be compelled to pay her proportion of the cost of the sewer. Plaintiff could have had her property included within the corporate limits of the town, and could have in the first instance secured a connection with the sanitary sewer by paying her proportionate part of the cost. We are unable to see why she was compelled to make the extra outlay for a cesspool, or why she having done so should now excuse her from paying what others paid, if she desires the use of the sewer. The evidence is uncontradicted that at the time the sewer was constructed, plaintiff offered to pay one-half of the expense of construction the extent of her property. However, that does not mean that the amount so offered would equal the amount assessed against other property, for the reason that the law requires that the whole cost of the sewer shall be apportioned against all the lots in the district in proportion to the area of the whole district. She now says that she should not pay anything except the permit fee of $2. Under these circumstances, the writ should not have been issued. The judgment of the trial court is reversed, and the cause remanded, with instructions to deny the writ.

TEEHEE, HERR, DIFFENDAFFER, and HALL, Commissioners, concur.

By the Court: It is so ordered.

Note.—"Municipal Corporations," 43 C. J. §126, p. 147, n. 2.