MORRILTON HOMES, INC. *v.* SEWER IMPROVEMENT DISTRICT No. 4.

5-868                                            287 S. W. 2d 581

Opinion delivered March 5, 1956.

*Phillip H. Loh,* for appellant.

*Townsend & Townsend,* for appellee.

GEORGE ROSE SMITH, J.   This is a suit by a municipal sewer district to recover connection charges assertedly due by reason of the appellant's unauthorized use of the district's sanitary sewer lines.   The complaint also asks that the appellant be enjoined from making additional connections without first paying a fee of $50 for each connection.   The chancellor fixed the connection charge at $30.   The decree gave the district a judgment for $630, representing the charges for twenty-one dwellings being served by the district, and enjoined the appellant from making future connections without paying a similar fee. An appeal and cross-appeal bring the whole case up for review.

The district was organized in 1924 and sold bonds to pay for the improvement.   The unpaid bonds are in default, and it does not appear that the sewer system has been turned over to the city by the district.   In 1949 the appellant bought fifty lots lying outside the district and began developing the property as a residential area.   The corporation laid sewer lines to service its lots and provided an outlet by connecting its system to the district's outfall, which leads to the disposal plant.   Although the

appellant's utilization of the district's line was approved by the state's resident sanitarian, the weight of the evidence shows that the district's commissioners did not authorize or consent to the connection.

There can be no question about the district's right to impose a charge for the use of its facilities. Such a charge has been upheld in a number of cases, for an outsider can fairly be required to pay for the privilege of using a system constructed at the expense of the district's taxpayers. See *Peay* v. *Kinsworthy,* 126 Ark. 323, 190 S. W. 565, and *Sloss* v. *Turner,* 175 Ark. 994, 1 S. W. 2d 993. In 1941 the principle was embodied in a statute. The act reads in part: "The Commissioners of the district shall have the right to consent to or refuse to allow such connections within their discretion, and such connections shall be made on such terms as the Commissioners may dictate, provided, however, that no lands outside of the district shall be permitted to connect with the sewer line of the district except upon payment to the district of a sum equal to the charge made against similarly benefited lands within the district." Ark. Stats. 1947, § 20-333. It will be seen that by its terms the statute imposes a duty on the commissioners to make the charge when, as here, the land to be served is outside the district.

The chancellor is not shown to have been in error in fixing the connection charge at $30 for each lot. The appellant contends that this amount is excessive; the district thinks it inadequate. It is shown that the district's assessment of benefits averaged $100 or more per lot. The appellant, however, laid its own mains and is utilizing the district's system only as an outlet; so a fair connection charge should be less than the amount paid by the district's landowners. We cannot say that the chancellor's conclusion, based upon conflicting testimony, is against the preponderance of the evidence.

The district's claim, however, is barred in part by the three-year statute of limitations. Ark. Stats., § 37-206. The appellant joined its system to the district's line in March, 1950, and this suit was not filed until June, 1954.

The commissioners did not learn of the connection until 1953, but ignorance of the existence of a cause of action does not suspend the running of the statute in the absence of fraudulent concealment by the defendant. *Hibben* v. *Malone*, 85 Ark. 584, 109 S. W. 1008. It is neither alleged nor proved that the appellant acted surreptitiously in making the connection in 1950. Rather the opposite, the corporation seems to have proceeded openly in the belief that it had a right to utilize the existing lines. There is no reason to think that the connection could not have been readily discovered by the exercise of ordinary diligence.

Although the appellant's main lines were joined to the district's outfall in 1950, the appellee's entire cause of action did not necessarily accrue at once. The statute is explicit in committing the matter of connection charges to the discretion of the commissioners. We perceive no manifest abuse of discretion in the commissioners' decision to make a separate charge as each newly built house is added to the sewer system. The original 1950 connection was intended to serve an indeterminate number of dwellings to be constructed in the future. It could not then be known how many homes would eventually be placed on the fifty lots, nor what the ultimate burden upon the district's drainage lines would be. The practice of accepting new connections individually rather than in mass would enable the district to prevent its facilities from becoming overloaded and cannot be regarded as an unreasonable exercise of the commissioners' discretion.

Of the twenty-one connections for which the district was given judgment below, thirteen appear to have been made more than three years before suit was filed. In holding that the recovery of these connection charges is barred by limitations we do not imply that the unauthorized use of the district's lines has given rise to a vested right that would prevent the district from refusing to continue the service in the future. That issue is not presented by this case.

The decree is modified to reduce the money judgment to $240. In other respects the decree is affirmed, the costs to be taxed equally.

HOLT and WARD, JJ., would affirm the decree.

PAUL WARD, Associate Justice (dissenting). It seems to me that the majority opinion fails to take cognizance of some vital aspects of this case. It makes the arbitrary finding that the connection charges for some of the houses in the Morrilton Homes Addition are barred by the three years statute of limitation without discussing the evidence showing when the District knew of the connections. I am loathe to believe the majority mean to announce, as a matter of law, that a person can secretly and unlawfully connect his home with a sewer system and thereby start the statute of limitations running in his favor. The *Hibben* case, cited by the majority, certainly does not justify such a principle of law. It seems to me that this case merely holds that ignorance of an existing legal right or obligation does not prevent the statute from running.

The important question in this case, I believe, is: Did the Sewer District know when the earlier connections were made? The evidence on this point was not discussed by the majority, so I shall refer to it.

The chancellor discussed the testimony on this point in detail and found that the Sewer District did not know when the connections were made. I submit the chancellor's finding on this point was not against the weight of the testimony.

First, the act of appellant in making the main connection with the appellee district should not be confused with the later connections made by the individual home owners. Most of the testimony is about the former, and even that is not clear. Mr. Morgan, one of the organizers of Morrilton Homes, [according to appellant's abstract] talked with the City Attorney in 1950 and told him they would either connect with the appellee district or they would build a septic tank. Later he talked with a Mr. Dilling, one of the sewer commissioners, about connect-

ing, and Mr. Dilling "didn't say he would not let us connect." One commissioner was quoted as giving permission to connect, but he denied it. At any rate, the important issue in this case is not whether the district knew about the main line connection in 1950 but whether they knew when each of the individual houses were connected. I find no positive testimony in appellant's abstract showing that the sewer district knew when the houses were individually connected. On the other hand, Mr. Reynolds, one of the district commissioners, testified that he first knew about the connection about a year before the suit was brought. Mr. Hawkins, one of the commissioners, said he never knew about the connections till he heard it on the streets, and that he had never been asked by Mr. Morgan or Mr. Loh for permission to connect. As stated by appellant, the commissioners contended that "they had no knowledge [of the connections] until after the survey in 1953 and that immediately thereafter they made demand for connection charges."

In view of the above state of the record, I submit that the decree of the trial court should be affirmed.